**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES J. HAYES, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>     vs. <br><br> HARMONY GOLD MINING COMPANY LIMITED, BERNARD SWANEPOL, and NOMFUNDO QANGULE <br><br>        Defendants. | Electronically Filed <br><br> No. 1:08-cv-03653-BSJ-MHD <br><br> (ECF Case) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**JAMES J. HAYES TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL**
<u>**OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

INTRODUCTION ............................................................................................................. 1

PROCEDURAL BACKGROUND....................................................................................... 3

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT..................................................................................................................... 6

I.    Hayes Should Be Appointed Lead Plaintiff............................................................... 6

    A.    The Procedural Requirements Pursuant To The PSLRA....................................... 6

    B.    Hayes Is "The Most Adequate Plaintiff" ............................................................. 7

        1.    Hayes Has Made A Motion For
           His Appointment As Lead Plaintiff ...........................................................7

        2.    Hayes Has The Largest Financial Interest ...................................................7

        3.    Hayes Otherwise Satisfies Rule 23 .............................................................8

           a.    Hayes Fulfills The Typicality Requirement...................................9

           b.    Hayes Fulfills The Adequacy Requirement...................................9

II.    The Court Should Approve Hayes's Choice Of Counsel...................................................10

CONCLUSION...........................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*City of Brockton Ret. Sys. v. Shaw Group, Inc.,*
   No. 06-08245, 2007 U.S. Dist. LEXIS 72745 (S.D.N.Y. Sept. 25, 2007)............................7, 9

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993) ........................9

*Ferrari v. Gisch,*
   225 F.R.D. 599 (C.D. Cal. 2004) ...................................................................................10

*Lax v. First Merchs. Acceptance Corp.*,
   No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..................................6

*In re Oxford Health Plans Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................7, 8

*In re Party Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999)..........................................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,*
   229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................6

*Sczensy Trust v. DiCamillo*,
   223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................................8, 10

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) .....................................................................................7

STATUTES

15 U.S.C. § 78u-4(a)(3) ....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A)(i)........................................................................................3, 6

15 U.S.C. § 78u-4(a)(3)(A) and (B)....................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)...........................................................................................8, 10

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)......................................................................................7, 10

15 U.S.C § 78u-4(a)(3)(B)(v) ...........................................................................................10

**RULES**

Rule 23(a) ..............................................................................................................8

Rule 23(a)(3)......................................................................................................9, 10

Rule 23(a)(4)......................................................................................................9, 10

**PRELIMINARY STATEMENT**

Harmony Gold Mining Company Limited ("Harmony Gold" or the "Company") investor

James J. Hayes ("Hayes" or "Movant") has losses totaling approximately $3,618 as a result of

his investments in Harmony Gold. Accordingly, Hayes is believed to have suffered the largest

financial loss of any other movant and, as such, has the largest financial interest in the outcome

of this litigation. As the most adequate plaintiff, as defined by the Private Securities Litigation

Reform Act of 1995 ("PSLRA"), Hayes hereby moves for his appointment as Lead Plaintiff of a

proposed class of persons or entities who purchased or acquired Harmony Gold's American

Depository Receipts ("ADRs") and call options, and sellers of Harmony Gold's put options,

between April 2, 2007 and August 7, 2007, inclusive (the "Class Period").

**INTRODUCTION**

The above-captioned action is a federal class action lawsuit that has been brought against

certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a)

of the Securities Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

Movant, with losses of approximately $3,618 in connection with his purchases of

Harmony Gold's ADRs and sale of Harmony Gold's put options during the class period, is

suitable and adequate to serve as Lead Plaintiff.[1] Movant has submitted a sworn certification,

demonstrating his desire to serve as Lead Plaintiff in this action and his understanding of the

---

[1] The losses suffered by Movant are not the same as his legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78-u(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

1

attendant duties and obligations of serving as such.  *See* Smith Decl. at Exhibit A.[2]  To the best

of his knowledge, Hayes's loss represents the largest known financial interest of any class

member seeking to be appointed as Lead Plaintiff.  *See* Smith Decl. at Exhibit C.  Movant is not

aware of any other class member that has filed an action or filed an application for appointment

as Lead Plaintiff that has sustained greater financial losses.  In addition, Hayes preliminarily

satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil

Procedure ("Rule 23") and, therefore, is qualified for appointment as Lead Plaintiff in these

actions.  Thus, as demonstrated herein, Movant is presumptively the most adequate plaintiff and

should be appointed Lead Plaintiff.

Hayes respectfully submits this memorandum of law in support of his motion, pursuant to

Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an

order: (1) appointing Hayes to serve as Lead Plaintiff pursuant to the Exchange Act; (2)

approving Hayes's selection of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") to serve as

Lead Counsel for the Class; and (3) approving Hayes's selection of Brodsky & Smith, LLC to

serve as Liaison Counsel for the Class.

---

[2] James J. Hayes's sworn Certification documenting his transactions pursuant to the federal
securities laws is attached as Exhibit A to the Declaration of Evan J. Smith In Support Of The
Motion Of James J. Hayes To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's
Selection Of Lead Counsel And Liaison Counsel (the "Smith Decl.").

## PROCEDURAL BACKGROUND

This Action was commenced in this jurisdiction on or about April 16, 2008.[3]  Pursuant to

15 U.S.C. § 78u-4(a)(3)(A)(i), on April 16, 2008, the first notice that a class action had been

initiated against defendants was published over a widely circulated national business-oriented

wire service advising members of the proposed class of their right to move the Court to serve as

Lead Plaintiff no later than June 16, 2008.  *See* Smith Decl. at Exhibit B.

Hayes is a putative class member (*see* Smith Decl. at Exhibit A) and is timely filing this

motion within the 60 day period following publication of the April 16, 2008 notice pursuant to

Sections 21D of the Exchange Act.

## STATEMENT OF FACTS[4]

Harmony Gold is a gold producer that operates 22 individual mines and projects

across the world.  Harmony Gold produced 2.3 million ounces of gold during fiscal year 2007.

At the end of fiscal year 2007, the Company's ore reserves amounted to 53.6 million ounces of

gold.  The Company reports its financial and operational results in divisions, which are

segmented into groups by Country of location, and which are further divided into four

categories: quality assets, growth projects, leveraged assets and surface operations.  Mines in the

Company's South African operations division include the Tshepong, Bambanani and Joel mines.

---

[3] Upon information and belief, the first filed lawsuit against defendants, *Hayes v. Harmony Gold Mining Co. Ltd., et al.*, No. 1:08-cv-03653, was filed in the United States District Court for the Southern District of New York on April 16, 2008.

[4] These facts were derived from the allegations contained in the class action styled as *Hayes v. Harmony Gold Mining Co. Ltd., et al.,* No. 1:08-cv-03653 (S.D.N.Y. filed Apr. 16, 2008).

Mines among the Company's Australian operations division include the Mt. Magnet and South Kal mines.

Harmony Gold reported its financial and operational results on a fiscal year ending on June 30th.  The Class Period began on April 2, 2007, the first trading day of Harmony Gold's fiscal fourth quarter 2007.  On April 25, 2007, Harmony Gold reported strong financial and operational results for its third quarter 2007 which ended March 31, 2007.  For the quarter, the Company reported that its headline earnings improved 31.8 percent to 58 SA cents per share, that its total operating profit rose 15.1 percent, and that its quarterly net profit increased 6.5 percent.  Additionally, the Company stated that its total cash operating costs "were marginally down," and that its South African underground operations "showed strong cost containment" with a 2.1 percent cost reduction.

On May 2, 2007, the Company reaffirmed its financial and operational results announced on April 25, 2007, and stated that its third quarter" was marked by a steady operational performance with sound cost control."  Additionally, the Company reported that two of its South African mines, Tshepong and Bambanani, had experienced underground fires, which resulted in a drop in production at those locations.  Production at another South African mine, Joel, was significantly impacted by the Company's decision to do "major re-engineering work" on a shaft.  However, despite these events, the Company reported that its costs were "well contained throughout the [South African] Group."  The Company also announced that it had launched a "significant" drill program at Mt. Magnet, one of its Australian sites, though it failed to disclose the full financial impact that was associated with this program.

The truth began to emerge on August 6, 2007, when the Company announced that its financial results for the quarter ending June 30, 2007 were "expected to differ significantly from

4

those of the three previous quarters as well as from the analysts' consensus." The Company also

stated that for the 4th quarter, it expected to report a headline loss of between 130 and 160 SA

cents per share, compared with a headline profit of 58 SA cents per share for the third quarter.

This quarterly loss was said to be primarily the result of the Company recording significantly

higher costs for the quarter, and included a 25 to 28 percent increase in the Company's total cash

operating costs as a result of "the newly installed accounting software system that resulted in

some of the March quarter's costs being captured in the June 2007 quarter." Thus, the Company

had substantially understated its costs in previous quarters and was forced to take substantial

charges in the fourth quarter to remedy such underreported costs. The Company further shocked

investors when it reported that its cost base had increased by 8 to 12 percent from the previous

six months and the Chief Executive Officer had resigned.

On this news, the Company's shares fell $2.45 per share, or over 18 percent, to close on

August 6, 2007 at $11.02 per share, on unusually heavy trading volume. The following day, the

Company's shares declined an additional $1.57 per share, or over 14 percent, to close on August

7, 2007 at $9.45 per share, again on heavy trading volume. This closing price represented a two-

day decline in the Company's shares of $4.02 per share, or 29.8 percent, and a cumulative

decline of $7.25 per share, or over 43.4 percent, from the value of the Company's shares at their

Class Period high of $16.70 on April 25, 2007.

**ARGUMENT**

**I.    HAYES SHOULD BE APPOINTED LEAD PLAINTIFF**

**A.    The Procedural Requirements Pursuant To The PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice with *PRNewswire* on April 16, 2008.[5] *See* Smith Decl. at Exhibit B. This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than June 16, 2008. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff", the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .

---

5 *PRNewswire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See In re Party Sec. Litig.*, 189 F.R.D. 91, 105 (D.N.J. 1999); *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 402 (S.D.N.Y. 2004); *See Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

>  (bb)  in the determination of the court, has the largest financial
>  interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal
>  Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Oxford Health Plans Inc. Sec. Litig.,* 182 F.R.D. 42

(S.D.N.Y. 1998)*; City of Brockton Ret. Sys. v. Shaw Group, Inc.,* No. 06-08245, 2007 U.S. Dist.

LEXIS 72745, at *4 (S.D.N.Y. Sept. 25, 2007).

## B.      Hayes Is "The Most Adequate Plaintiff"

### 1.      Hayes Has Made A Motion For His Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after

publication of the notice, Hayes timely moves this Court to be appointed Lead Plaintiff on behalf

of all plaintiffs and class members covered by the above captioned action and any other actions

deemed related by this Court.

### 2.      Hayes Has The Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii) the court shall appoint as Lead Plaintiff the

class member who represents the largest financial interest in the relief sought by the action.  *See*

*Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).  As is demonstrated herein,

Hayes (with losses of $3,618) has the largest known financial interest in the relief sought by the

Class.  *See* Smith Decl. at Exhibit C.

### 3.      Hayes Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a

party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy –

directly address the personal characteristics of the class representative. Consequently, in

deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality

and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

the Lead Plaintiff moves for class certification. *See Oxford Health,* 182 F.R.D. at 49 (holding

that typicality and adequacy are the only relevant prerequisites to Lead Plaintiff selection under

the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004)

(same).

Hayes has claims that are typical of other class members and can adequately serve as

Lead Plaintiff. As detailed below, Hayes satisfies both the typicality and adequacy requirements

of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### a.    Hayes Fulfills The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of

those of the class. Typicality exists if "each class member's claim arises from the same course

of events, and each class member makes similar legal arguments to prove the defendant's

liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert.*

*dismissed sub nom.*, 506 U.S. 1088 (1993); *see also City of Brockton Ret. Sys.*, 2007 U.S. Dist.

LEXIS 72745, at *7 (quoting same).

Hayes seeks to represent a class of purchasers of Harmony Gold's ADRs and call

options, and sellers of Harmony Gold's put options which have identical, non-competing and

non-conflicting interests.  Hayes satisfies the typicality requirement because, just like all other

class members, he: (1) purchased or acquired ADRs and sold put options during the Class

Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading

statements and/or omissions; and (3) suffered damages thereby.  Thus, Hayes's claims are typical

of those of other class members since his claims and the claims of other class members arise out

of the same course of events.

### b.    Hayes Fulfills The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the

interests of the class."  *See also City of Brockton Ret. Sys.*, 2007 U.S. Dist. LEXIS 72745, at *6-

7.  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1)

whether there are any conflicts between the interests of the Movant and the members of the

Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the

interests of the Movant are clearly aligned with the members of the putative Class; and (4)

whether there is evidence of any antagonism between their respective interests.  15 U.S.C. § 78u-

4(a)(3)(B).  As detailed above, Hayes shares common questions of law and fact with the

members of the Class and his claims are typical of the claims of other class members.  Further,

Hayes has already taken significant steps demonstrating that he has and will protect the interests

of the Class: he has executed a sworn certification detailing his Class Period transactions and

expressing his willingness to serve as Lead Plaintiff; he has moved this Court to be appointed as

Lead Plaintiff in this action; and he has retained competent and experienced counsel who, as shown below, will be the most capable of adequately represent the interests of the class members. *See Sczensy Trust*, 223 F.R.D. at 324 (discussing adequacy requirement). Furthermore, Hayes has the largest known financial interest which gives him "an incentive to prosecute the action vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). Thus, Hayes, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**II.    THE COURT SHOULD APPROVE HAYES'S CHOICE OF COUNSEL**

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. In that regard, Hayes has selected and retained SBTK to serve as Lead Counsel for the Class and Brodsky & Smith, LLC to serve as Liaison Counsel for the Class. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. *See* Smith Decl. at Exhibits D and E.

SBTK has specialized in prosecuting complex class action litigation for over twenty years and has emerged as one of the preeminent law firms in its field. SBTK is currently serving as Lead or Co-Lead counsel in several high profile securities class actions and has represented defrauded investors in numerous class actions recovering billions of dollars for injured class members. Indeed, SBTK served as Co-Lead Counsel in the *In re Tyco International Ltd. Securities Litigation*, No. 02-266-PB (D.N.H.) procuring a settlement valued

10

at $3 billion – one of the largest securities class actions settlements in United States history. *See* Smith Decl. at Exhibit D.

Because there is nothing to suggest that Movant or his counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses – which is the ***only*** evidence that can rebut the presumption of adequacy under the Exchange Act – this Court should appoint Hayes as Lead Plaintiff and approve his selection of Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class and Brodsky & Smith, LLC as Liaison Counsel for the Class.

<u>CONCLUSION</u>

For the foregoing reasons, Hayes respectfully requests that the Court: (a) appoint Hayes as Lead Plaintiff; (b) approve Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class; and (c) approve Brodsky & Smith, LLC as Liaison Counsel for the Class.

Dated: June 16, 2008                                    Respectfully submitted,

**BRODSKY & SMITH, LLC**

By:    */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626

11

Proposed Liaison Counsel

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**
Sean M. Handler
Steven D. Resnick
280 King of Prussia Road
Radnor, PA 19087
Telephone:    (610) 667-7706
Facsimile:    (610) 667-7056

**Proposed Lead Counsel**