UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x

JAMES J. HAYES, Individually and on       :
Behalf of All Others Similarly            :
Situated,                                 :
                                          :
                    Plaintiff,            :        08 Civ. 03653
                                          :           (BSJ)(MHD)
          v.                              :
                                          : **Memorandum and Opinion**
HARMONY GOLD MINING COMPANY LIMITED,      :
                                          :
                                          :
                    Defendant.            :
                                          :
-----------------------------------------x

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


     On November 10, 2011, the Court held a hearing regarding

final approval of the proposed settlement and requested

attorneys' fees in this class action.  For the reasons stated on

the record, the settlement of $9 million was approved as fair,

reasonable, and adequate, and the Court awarded attorneys' fees

in the amount of one third of the total recovery.  In advance of

the hearing, James J. Hayes submitted written objections to the

proposed settlement and attorneys' fees in the form of a formal

objection to the preliminary settlement approval[1] ("Hayes Opp.

_____

[1] On August 2, 2011, this Court entered an Order Preliminarily Approving the
Settlement and Providing For Notice of Settlement.  Dkt. 74.  On August 4,
2011, Mr. Hayes filed his Opposition to Preliminary Approval of the
Settlement.  Dkt. 78.  This Court issued an order on August 9, 2011, which
directed the Clerk of the Court to accept Mr. Hayes' opposition papers, and
noted that Mr. Hayes' objections would be considered at the fairness hearing.
Dkt. 76.

Mem.") and a subsequent letter to the Court dated October 17,
2011 ("Hayes Letter").  At the hearing, Mr. Hayes made two oral
motions and reiterated his written objections to the proposed
settlement and attorneys' fees.[2]

## I. PRESUMPTION OF FAIRNESS

Mr. Hayes first asserts that the Second Circuit's decision
in In re Initial Public Offerings Securities Litigation, 471
F.3d 24 (2d Cir. 2006), prohibits courts from presuming that a
proposed settlement is fair "even if the settlement is reached
in arm's-length negotiations between experienced, capable
counsel after meaningful discovery."  Hayes Opp. Mem. 2.
According to Mr. Hayes, the IPO decision requires courts to
apply a heightened level of scrutiny and places the burden on
the proponents of the settlement to make an affirmative showing
of fairness by a preponderance of the evidence.  See Hayes
Letter 1-2; Hayes Opp. Mem. 2.

Mr. Hayes' interpretation of the decision in IPO is
incorrect.  That decision clarified the standards for deciding a
motion for class certification under Rules 23(a) and (b).  IPO,
471 F.3d at 26.  This Court has been unable to locate any
precedent where a court applied a preponderance standard in

---

[2] The Court has also reviewed Mr. Hayes' letter motion for reconsideration,
dated November 18, 2011, and finds that it essentially reargues the same
issues that the Court addressed both at the fairness hearing and now in this
opinion.

determining the fairness of a proposed class settlement under Rule 23(e), and rejects Mr. Hayes' position as inapposite.

It is well settled in this Circuit that courts may presume fairness where the proposed settlement is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005). As this Court observed at the fairness hearing, the parties here employed an arm's-length negotiation process, which included the use of an experienced mediator, and counsel for both sides were highly capable. Hr'g Tr. 23:11-15.

Mr. Hayes next asserts that courts must apply a purely quantitative calculation of the benefits to the class from the proposed settlement versus the estimated benefits from continued litigation, including the risks of establishing liability and damages should the case proceed to trial, and that insufficient evidence has been provided to this Court for it to conduct that type of analysis. Hayes Letter 2; Hayes Opp. Mem. 4. Mr. Hayes relies principally on In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995), Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646 (7th Cir. 2006), and Reynolds v. Beneficial National Bank, 288 F.3d 277 (7th Cir. 2002), to support this

3

proposition.  Hayes Letter 2; Hayes Opp. Mem. 4; see also Hr'g
Tr. 19:19-21:14.

Mr. Hayes points to opinions that merely reinforce the
established principles that determining the fairness of a
settlement requires a comparison of the estimated value of
continued litigation with the amount of the proposed settlement,
General Motors Corp. Pick-Up Truck, 55 F.3d at 806, and that
proponents of a proposed settlement should provide the court
with sufficient information with which to estimate possible
outcomes of continued litigation.  Synfuel Tech., 463 F.3d at
653; Reynolds, 288 F.3d at 284-85.  In fact, courts in the
Second Circuit are instructed not to engage in the "detailed and
thorough investigation that [the court] would undertake if it
were actually trying the case."  City of Detroit v. Grinnell
Corp., 495 F.2d 448, 462 (2d Cir. 1974), abrogated on other
grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d
Cir. 2000).  District judges are instead directed to apply the
nine-factor test outlined in Grinnell.  See Ouellette v.
Cardenas, No. 10 Civ. 3806, 2011 WL 4425361, *1 (2d Cir. Sep.
23, 2011).

Mr. Hayes disapproves of the Grinnell factors, and
characterizes them as "a catch all collection of qualitative
considerations that . . . simply are not relevant to the Harmony
class action. . . ."  Hayes Letter 2 n.2.  However, the

4

Grinnell opinion commands the same attention to balancing the strength of the plaintiff's case against the proposed settlement amount that Mr. Hayes advocates. Grinnell, 495 F.2d at 456; Synfuel, 463 F.3d at 653; In re General Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n.44 (7th Cir. 1979).

Moreover, the process of determining the value of continued litigation "is not susceptible of a mathematical equation yielding a particularized sum." In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02 Civ. 3400, 2010 WL 4537550, *20 (S.D.N.Y. Nov. 8, 2010) (quoting In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 130 (S.D.N.Y. 1997)); see also Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55, 57 (S.D.N.Y. 2003) ("[T]he amount of damages is an issue of fact and is not easily calculable at this juncture with any reasonable certainty.") (citations omitted). The evaluation turns instead on whether "there is a range of reasonableness with respect to a settlement. . . ." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). Here, Class Counsel employed a highly qualified economic expert who generated two ranges of estimated damages based on a comparison of the estimated value to the Class of continued litigation and the risks of establishing liability and damages specific to this case. Finnerty Decl. ¶¶ 35, 38, Oct. 28, 2011 (estimating total aggregate damages for price drop August 6, 2007 and August 7, 2007, were $81.6 million to $92.8 million and

total aggregate damages for price drop on August 6, 2007 only
were $55.9 million to $63.8 million).[3]  The Court found that,
even compared to the more generous of the two ranges, the
proposed settlement amount is "an excellent result."  Hr'g Tr.
26:10-16.

## II. CONFLICT OF INTEREST

Mr. Hayes next asserts his belief that there is an inherent
conflict of interest between Class Counsel and the Class, which
makes approval of the proposed settlement impossible.  Hayes
Letter 2; Hayes Opp. Mem. 5.  Because of the "identity of
interest between class counsel's desire for a no risk fee and
defendant's desire for the lowest cost settlement," he argues,
settlement negotiations "are essentially fee negotiations
between class counsel and the defendants."  Hayes Opp. Mem. 5.
According to Mr. Hayes, the universal settlement process
employed in all large-scale securities class actions is
inevitably plagued with this conflict of interest.  Id. at 5.
Mr. Hayes attempts to bolster his opinion with use of a
hypothetical scenario in which class counsel is incentivized to

---

[3] At the hearing, Mr. Hayes objected to the lower of Dr. Finnerty's ranges.
Hr'g Tr. 3:13-14.  His criticism focused on the 1% probability that the two-
day drop in price was a result of mere chance.  Id. at 7:13-19.  Mr. Hayes
incorrectly assumes that such a probability eliminates the possibility that a
jury could find that the August 7 drop in price was not attributable to the
alleged fraud.  Class Counsel did not argue that the August 7 drop would not
count towards the total damages to the Class; it merely emphasized that a
jury could accept Defendant's argument to that effect and provided a range of
estimated damages to reflect that possibility.  Id. at 7:23-8:4.

settle a case with a 20% trial success rate and where proceeding
to a trial "is clearly in the class's interest." Id. at 6.

To eliminate the purported conflict of interest, Mr. Hayes
proposes a process whereby settlement negotiations are conducted
on a per-share basis, rather than in the context of a final lump
sum recovery. Under Mr. Hayes' approach, Defendant would
compensate class members with a negotiated amount certain for
each affected share of Harmony Gold stock, and the total funds
paid by Defendant would depend entirely on the ultimate number
of claims submitted by class members. Hr'g Tr. 14:15-15:10;
Hayes Letter 2; Hayes Opp. Mem. 8. Accordingly, Class Counsel's
fee would be determined on a per-share basis rather than as a
percentage of a lump sum. Hayes Letter 2; Hayes Opp. Mem. 8.
Mr. Hayes appears to believe that recovery determined on a per-
share/per-claim basis is scientifically discernible, whereas an
expert's estimate of the potential total damages in a complex
litigation is highly speculative. Hayes Opp. Mem. 8. It
follows, Mr. Hayes argues, that courts cannot satisfactorily
evaluate the fairness of a proposed settlement based on vague
approximations. Id. at 8-9.

Mr. Hayes has failed to establish the existence of a
conflict of interest, and his flawed hypothetical does little to
demonstrate such a conflict. Nowhere does Mr. Hayes explain his
assumption that the hypothetical class would necessarily benefit

from proceeding to a trial with a 20% probability of success.
Hayes Opp. Mem. 6.  Nor does he address the substantial risks
associated with continuing litigation in this case, which is
required in a fairness analysis.[4]  Grinnell, 495 F.2d at 463.
Moreover, Mr. Hayes' argument lacks a factual or legal
foundation, and if it were accepted, every settlement of a
securities class action would be rendered unfair.  That notion
is simply untenable, and has been rejected elsewhere.  See,
e.g., In re Nice Sys., Ltd. Sec. Litig., No. 03-2262, slip op.
at 1 (3d Cir. Feb. 9, 2004); Desert Orchid Partners, L.L.C. v.
Transaction Sys. Architects, Inc., No. 02 Civ. 553, 2007 WL
703515, *1 (D. Neb. Mar. 2, 2007).

     Even if the lump sum/percentage structure employed in this
case did create a conflict of interest between Class Counsel and
the Class, it remains unclear whether Mr. Hayes' proposed
alternative would fare any better.  Tying attorneys' fees to a
percentage of total recovery is typical in this type of
litigation because it "makes a lot of sense in terms of
alignment of interests and incentivizing counsel to do the best
possible job."  Hr'g Tr. 27:24-25; see also Flag Telecom, 2010
WL 4537550 at *23 ("[T]he percentage of recovery methodology is
considered the most efficient and logical means for calculating

---

[4] As the Court observed at the fairness hearing, the circumstances of this
action presented considerable risks.  Hr'g Tr. 24-27.

8

attorneys' fees.") (citations omitted); <u>In re Marsh & McLennan</u>
<u>Cos., Inc. Sec. Litig.</u>, No. 04 Civ. 8144, 2009 WL 5178546, *14
(S.D.N.Y. Dec. 23, 2009) ("[T]the percentage method continues to
be the trend of district courts in this Circuit and has been
expressly adopted in the vast majority of circuits....").

   The Court also rejects Mr. Hayes' assertion that a per-
share structure would eliminate problematic speculation from the
settlement negotiations, and that only then can courts make
legitimate fairness determinations.  First, while a per-share
calculation may yield a knowable amount of recovery for each
affected share, the total number of claims to be filed remains
completely unknown.  Thus, the settlement negotiation still
requires considerable speculation.  Second, whatever speculation
may exist in estimating total damages does not in any way
preclude a finding of fairness.  <u>In re AOL Time Warner, Inc.</u>,
No. 02 Civ. 5575, 2006 WL 903236, *12 (S.D.N.Y. Apr. 6,
2006)("The settlement amount's ratio to the maximum potential
recovery need not be the sole, or even the dominant,
consideration when assessing the settlement's fairness.")
(citations omitted); <u>Thompson</u>, 216 F.R.D. at 67(approving
settlement where court was not provided with an estimate of
total damages).

   Finally, Mr. Hayes has failed to establish beyond
conclusory statements the benefits of his per-share negotiation

structure.  On the contrary, Mr. Hayes' approach would likely

hinder any settlement negotiation.  Because the per-share

structure yields no ultimate settlement amount, a defendant's

commitment would depend entirely on the number of class members

who ultimately decide to submit claims.  See Hr'g Tr. 15:11-15.

It is more than unlikely that a defendant in a securities class

action would agree to an open-ended settlement of that nature,[5]

as it provides no finality, which is a necessary element of any

settlement agreement.  See In re Ramp Corp. Sec. Litig., No. 05

Civ. 6521, 2007 WL 1964153, *2 (S.D.N.Y. Jul. 3, 2007).

## III.  THE "SMOKING GUN"

In his final written objection, Mr. Hayes argues that

settlement is premature because Class Counsel lacks a

fundamental understanding of the strength of the case against

Harmony Gold.  Hayes Opp. Mem. 10.  Mr. Hayes asserts that Class

Counsel has overlooked "a proverbial smoking gun that shows

serious misconduct at Harmony."  Id. at 11.  The smoking gun to

which Mr. Hayes refers consists of statements made in Harmony

Gold's 2007 Annual Report, which described faults in the new

accounting system that caused the company to underreport costs

for the quarter.  Id. at 10-11.  Mr. Hayes contends that by

ignoring this key evidence and failing to conduct a sufficient

---

[5] In fact, Class Counsel presented such a proposal to Defendant in the early
stages of negotiations, and "it was a non-starter."  Hr'g Tr. 15:16-19.

investigation, Class Counsel has demonstrated a lack of understanding of the case, and approving the settlement would therefore be inappropriate.  Id.

     As a preliminary matter, Mr. Hayes ignores the high caliber of and substantial work performed by Class Counsel in this case. Hr'g Tr. 26:1-7, 27:5-11.  Counsels' efforts reflect significant investigation and factual analysis, and they have demonstrated a comprehensive understanding of this case.  Id. at 27:5-9.

     In addition, and more fundamentally, Mr. Hayes fails to recognize that proving scienter in a securities fraud case requires considerably more than quoting a passage from an annual report that acknowledges problems with the accounting system. See Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001)(finding that defendants' admissions of errors in financial reports "is a far cry from . . . an adjudication of securities fraud").  Were the Court to adopt Mr. Hayes' position, it would improperly impose a strict liability standard on securities fraud claims when the requisite mental state is much higher.  To establish the required state of mind in a securities fraud action, a plaintiff must demonstrate that a defendant "acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (citations omitted); see also Flag Telecom, 2010 WL 4537550 at *17

11

(emphasizing that establishing scienter in securities fraud cases is especially difficult).  Scienter may also be established by demonstrating that a defendant acted with severe recklessness.  Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 194 (2d Cir. 2008).

This case presents particular challenges to proving that Defendant acted intentionally or with severe recklessness.  Hr'g Tr. 24-26.  For example, the absence of any individual defendants in this action requires Plaintiffs to prove scienter by circumstantial evidence alone.  See In re Veeco Instruments Inc. Sec. Litig., No. 05-MDL-0165, 2007 WL 4115809, *9 (S.D.N.Y. Nov. 7, 2007).  All potential fact witnesses are located in South Africa, where the authorities have yet to respond to letters rogatory issued under the Hague Convention more than a year ago.  Hr'g Tr. 24:24-25:3.  In addition, both an independent auditor and the third-party installers of the problematic accounting system approved the system before Harmony Gold began to use it.  Id. at 24:12-20; see also Veeco Instruments, 2007 WL 4115809 at *9 (finding reasonable reliance on auditor posed challenge to establishing scienter).  Mr. Hayes' belief that the statements he identified will surely suffice to prove scienter is overly simplistic, and this Court rejects it.

**IV. ORAL MOTIONS AT THE FAIRNESS HEARING**

At the fairness hearing, Mr. Hayes made two oral motions. First, he asked to adjourn the hearing "until Dr. Finnerty can be present for cross-examination on the settlement declaration." Hr'g Tr. 2:15, 4:4-5.  Mr. Hayes asserted that the basis for Dr. Finnerty's lower range of possible damages is "specious," and he requested an opportunity to establish as much via cross-examination.  Id. at 4:8-11.  The Court denied Mr. Hayes' motion because he was unable to proffer any information he hoped to gain from the requested cross-examination that would aid the Court in making its fairness determination.  Id. at 4:8-18.

Mr. Hayes next requested that "a decision and presentation on the class counsel's fees be postponed until after a decision is made on the fairness."  Id. at 8:7-9, 8:18-19.  In support of this request, Mr. Hayes argued that deciding the fairness issue and the appropriateness of the attorneys' fees at the same hearing "is prejudicial to the class."  Id. at 8:23.  The fairness hearing was scheduled so that the Court could "decide whether or not the settlement and the fees are fair and reasonable."  Id. at 8:10-12; see also Order Preliminarily Approving Settlement and Providing For Notice of Settlement, 3, Aug. 2, 2011.  Mr. Hayes could not provide any reason that the Court should hold separate hearings rather than addressing the issues consecutively at the hearing scheduled specifically for that purpose.

SO ORDERED:

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:      New York, New York
            November 29, 2011

14